IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LEONARD FOBERT, | ) | Civil No.: 3:11-cv-06195-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

David W. Hittle
388 State Street
Suite 810
Salem, OR 97301

      Attorney for Plaintiff


S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Willy M. Le
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

Roberta G. Bowie
Social Security Administration
Office of General Counsel
1301 Young Street, Suite A702
Dallas, TX 75202-4117

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

      Plaintiff Leonard Fobert, Jr. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-83f.

      For the reasons set out below, the Commissioner's decision should be reversed, and the action should be remanded for an award of benefits.

## **Procedural Background**

      Plaintiff filed an application for SSI on December 19, 2007, alleging that he had been disabled since his birth on August 29, 1981, because of cerebral palsy and epilepsy. After his application had been denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

      A hearing was held before ALJ James Yellowtail on August 5, 2010. In a decision filed on August 5, 2010, ALJ Yellowtail found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on April 11, 2011, when

the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff seeks review of that decision.

## Background

Plaintiff was born with cerebral palsy and began to have grand mal seizures in 1995.  At the time of the hearing, Plaintiff's seizures had been controlled by medication for approximately two years.

Plaintiff graduated from high school and earned a Bachelor's Degree in Humanities at Western Oregon University in 2010.  Because of his seizures, Plaintiff cannot drive.  Plaintiff lives with his father, and relies on him for transportation and material support.  He is 5'8" tall, and weighed approximately 110 pounds at the time of the hearing.

For approximately two years, Plaintiff worked two hours a day, two days a week, gathering books in the university library under a work-study program.  In a report he submitted to the Agency, Plaintiff stated that the university had accommodated his disability in this position, and that he was ultimately replaced by another student.  This work did not constitute substantial gainful activity, and Plaintiff has no past relevant work experience.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A

claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of the claimant's case

proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work

he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If

the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's

evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

### Medical Record

Dr. Patrick McDonald, Plaintiff's primary treating physician, submitted medical records dated April 17, 2003 through October 10, 2007.  Dr. William Seeto, a treating neurologist, provided records from June 10, 2003 through February 3, 2010.  Both of these treating physicians completed medical source statements describing Plaintiff's functional capacity.

### Dr. McDonald

Dr. McDonald reported that Plaintiff's cerebral palsy, seizures, and fatigue caused by plaintiff's medications permanently limited Plaintiff's functional capacities as follows.

Drowsiness caused by his medications required Plaintiff to sleep 3 hours during an 8 hour workday.  Plaintiff could sit for 2 hours at a time, and could sit a total of 3 hours during an 8 hour workday.  He could stand/walk for 1 hour at a time and for a total of 2 hours during a workday.  Plaintiff could rarely lift/carry 10 pounds, and could occasionally balance and stoop.  He could frequently use his left hand for handling, but could not use his right hand at all for reaching, handling, or fingering.  Plaintiff's medical condition would require Plaintiff to miss work 10-12

FINDINGS AND RECOMMENDATION - 5

days per month.  Plaintiff did not have the capability to manage the funds in his best interest if he were awarded disability benefits.

**Dr. Seeto**

Dr. Seeto described Plaintiff's symptoms and impairments arising from his cerebral palsy and seizure disorder as follows.

Because of fatigue related to his medical condition, in addition to the normal breaks to eat and rest, Plaintiff would need to lie down for 2 hours during a normal workday.  He can sit for more than 3 hours at a time, for a total of 4 hours during a workday.  He can stand/walk for 2 hours at a time for a total of 4 hours during a workday.  Plaintiff can lift/carry 5 pounds constantly and 10 pounds frequently, and can rarely exceed that level.  He can rarely balance or climb, and can occasionally stoop.  Plaintiff cannot use his right arm for reaching, handling, or fingering.  If he were employed, Plaintiff's impairments would cause him to miss 1 or 2 days of work per month.  If benefits were awarded, Plaintiff was capable of managing them in his best interests.

**Dr. Donald Ramsthel**

Plaintiff was examined by Dr. Donald Ramsthel on March 1, 2008.  Dr. Ramsthel noted that cerebral palsy primarily affected Plaintiff's right side, and resulted in right sided hemiparesthesis.  Plaintiff was a university student at the time, and Dr. Ramsthel noted that he could "do his ADLs."  Dr. Ramsthel noted that Plaintiff had undergone surgery on his right arm and that his left leg tendon had been surgically lengthened, and that Plaintiff used an orthotic device on his right leg at night only.  He reported that Plaintiff had "questionable slightly slurred speech."

FINDINGS AND RECOMMENDATION - 6

Dr. Ramsthel found that Plaintiff had a significant right-hand limitation, and could "stand and walk and be on his feet" for 2 to 3 hours at a time, for a total of 6 to 7 hours during an 8 hour workday.  He found that Plaintiff's ability to sit was not limited, that Plaintiff could lift and carry up to 15 pounds, and that handling objects was difficult for him because his right hand was "virtually useless."

**Non-examining Agency Physicians**

Non-examining Agency physicians found that Plaintiff could perform light work with limited use of his right upper extremity.  They found that Plaintiff was limited to occasional crawling, and could not climb ladders, ropes, and scaffolds.

## Hearing Testimony and Lay Witness Evidence

**Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff essentially has no use of his right arm and hand.  His seizures were under control at the time of the hearing, but the anti-seizure medications required him to nap for several hours during the day.  When he attended the University, Plaintiff did most of his homework on the weekends because he could not stay awake long enough after taking classes during the week. Plaintiff attended a community college before he studied at the University, and he attended these institutions a total of 10 years before receiving his undergraduate degree.   He cannot sit still, and feels as if he needs to move around frequently while seated.

**Leonard Fobert, Sr.**

Plaintiff's father, Leonard Fobert, Sr., submitted a written statement dated July 13, 2010, describing Plaintiff's symptoms and impairments as follows.

Plaintiff was born with cerebral palsy, which caused a lack of control of his actions, seizures, and weakness on the right side of his body. Medication controls the palsy and seizures. Severe weakness and partial paralysis of Plaintiff's right arm results in a very limited range of motion and significantly reduces the usefulness of his right arm and hand, rendering him essentially a one armed person. Plaintiff cannot reach above his shoulder, his right elbow does not flex, and he cannot lift or carry things with the right arm. Cerebral palsy also affects Plaintiff's speech, because the right side of his mouth has some paralysis which makes it difficult for him to form words. People have difficulty understanding what he is saying.

Plaintiff's medications have significant side effects. The most significant of these is mental fatigue and sedation, which become more pronounced throughout the day and require Plaintiff to sleep for several hours every afternoon. Without this rest, Plaintiff is nearly non-functional.

**Lou Jean Fobert**

Lou Jean Fobert, claimant's mother, submitted a Third Party Function Report dated January 14, 2008, describing Plaintiff's impairments as follows.

Plaintiff's medications make him sleepy. Buttons and fasteners are difficult for Plaintiff, and "shoelaces are impossible." Cooking is difficult for Plaintiff, and he did not prepare his own meals at the time of the Report because he was living in a dorm where meals were provided. Plaintiff found any chores that required two hands difficult or impossible, and he had difficulty

FINDINGS AND RECOMMENDATION - 8

walking, climbing stairs, balancing, and using his hands.

**Vocational Expert**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and experience, who could lift 15 pounds, could be on his feet 6 hours and sit for up to 8 hours during the workday if allowed brief changes of position hourly, and could not use his right arm "for any significant purpose." The VE testified that the described individual could work as an information clerk, surveillance system monitor, or gate guard, and that the addition of certain postural limitations would not preclude performance of such work. The VE testified that restricting an individual to a total of 5 hours of sitting, standing, and walking, and requiring that an individual be allowed to lie down to rest for 3 hours during the workday would preclude competitive employment. In response to questioning by Plaintiff's attorney, the VE testified that a need for 2 hours of rest during the workday would likewise preclude employment.

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2007, the date on which he filed the application for SSI benefits at issue in this action.

At the second step, the ALJ found that Plaintiff's cerebral palsy was a "severe" impairment within the meaning of 20 C.F.R. § 416.920(c).

At the third step, the ALJ found that Plaintiff's impairment did not meet or equal a presumptively disabling impairment set out in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found that, with certain restrictions, Plaintiff could perform light exertional level work. The ALJ concluded that Plaintiff could not use his upper right extremity, was limited to lifting no more that 15 pounds with his left upper extremity, was not limited in his capacity to sit, could stand/walk up to 6 hours if "permitted to briefly change positions every hour," and could not crawl or climb ladders, ropes, or scaffolds. In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning his limitations and impairments were not credible to the extent they were inconsistent with this assessment.

At the fourth step of his disability assessment, the ALJ found that Plaintiff had no past relevant work.

Based upon the testimony of the VE, at the fifth step the ALJ found that Plaintiff could perform "other work" that existed in substantial numbers in the national economy. He cited information clerk, surveillance system monitor, and gate guard positions as examples of such work. Based upon this conclusion, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

**<u>Standard of Review</u>**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122

FINDINGS AND RECOMMENDATION - 10

(1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ erred in failing to consider the lay witness statement of Lou Jean Fobert, Plaintiff's mother; failing to fully credit the lay witness statement of Leonard Fobert, Sr., Plaintiff's father; failing to provide adequate support for his rejection of the opinions of Plaintiff's treating physicians; failing to fully credit Plaintiff's testimony; and failing to account for drowsiness in assessing Plaintiff's RFC.

### 1. Lou Jean Fobert's Witness Statement

As noted above, Lou Jean Fobert, Plaintiff's mother, submitted a report describing Plaintiff's functional abilities. Her most significant observation was that Plaintiff's medications made Plaintiff drowsy during the day.

The ALJ made no reference to Ms. Fobert's statement.  The Commissioner contends that this omission is not significant because the ALJ accommodated Plaintiff's manipulative difficulties which Ms. Fobert had described by limiting Plaintiff to light work that did not require the use of the upper right extremity, and accommodated the difficulties of walking and lifting that she described by limiting Plaintiff to 6 hours of walking/standing per day, imposing postural limitations, and limiting Plaintiff to lifting no more than 15 pounds.  The Commissioner asserts that any failure to mention Ms. Fobert was harmless because the ALJ's RFC was "largely consistent" with her description of Plaintiff's limitations.

This argument is not persuasive.  The medical evidence provided by Plaintiff's treating physicians indicated that Plaintiff's most significant limitation was the need to sleep several hours during the work day because of fatigue associated with cerebral palsy and drowsiness caused by his medications.  Ms. Fobert's assertion that Plaintiff experienced daytime drowsiness was consistent with that evidence.  The ALJ's RFC, which required Plaintiff to be active during times that the treating physicians opined he would need to lie down to rest, did not account for this limitation.

An ALJ must provide reasons that are "germane" for rejecting the statements of lay witnesses, e.g., Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), and may not disregard such evidence without comment.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Though the ALJ did not explicitly refer to Ms. Fobert's statements, in concluding that Plaintiff could remain active throughout a full 8 hour workday he implicitly rejected the most important of her observations concerning Plaintiff's functional capacity.  The ALJ erred in rejecting Ms. Fobert's observations without comment.  This error was not harmless, because Plaintiff's ability to stay

awake and effectively function throughout an entire workday was a critical question in assessing Plaintiff's functional capacity.

2. **ALJ's Rejection of Leonard Fobert, Sr.'s Testimony**

Leonard Fobert, Sr.'s statement describing Plaintiff's functional limitations is summarized above.  Most notably, Fobert, Sr. reported that Plaintiff's medications cause mental fatigue and sedation, which become more pronounced throughout the day, and require Plaintiff to sleep for several hours every afternoon.  He further reported that, without this rest, Plaintiff is nearly non-functional.

The ALJ accepted Mr. Fobert's statement as "descriptive of his own perceptions," but concluded that it did "not provide sufficient support to alter" his own evaluation of Plaintiff's RFC.  He asserted that the behavior that Mr. Fobert reported was "not fully consistent with the medical and other evidence of record, which show the claimant is capable of living independently and working toward an undergraduate degree in Humanities without special accommodation."

The ALJ's reasons for rejecting Mr. Fobert's testimony are not entirely accurate and do not directly address the critical issue of Plaintiff's ability to remain awake and active during an entire workday.  Mr. Fobert's assertion that Plaintiff could not stay awake throughout the day, and that he could not function effectively without substantial rest during the day, was consistent with the medical opinions of Plaintiff's treating physicians.  Though the record is devoid of evidence that Plaintiff ever actually lived "independently," his ability to do so is not the critical issue, because the capability to live independently and the capability to remain effectively functional for an entire workday are different issues.  The testimony of the VE supports only the conclusion that an individual who could live independently but nevertheless could not complete

an 8 hour workday without sleeping for at least two hours could not sustain competitive employment.   Plaintiff's ability to complete an undergraduate degree "without special accommodations" is not wholly relevant, either.  Arguably, the extraordinary time Plaintiff required to earn an undergraduate degree–10 years while remaining essentially unemployed– amounts to a sort of accommodation.  In any event, nothing in the record of Plaintiff's studies contradicts Plaintiff's, the lay witnesses', or Plaintiff's treating physicians' description of the effects of Plaintiff's medications.  Nothing in the record contradicts Plaintiff's assertion that he took a light academic study load each term and could not both attend classes and complete homework on the same day, and nothing in the record of Plaintiff's studies is inconsistent with the substantial  evidence that Plaintiff cannot remain alert, active, and attentive throughout an entire normal workday.  Under these circumstances, the ALJ's reasons for rejecting Mr. Fobert Sr.'s testimony cannot be fairly characterized as "germane."

3. **Opinions of Plaintiff's Treating Physicians**

As noted above, Plaintiff's treating physicians, Drs. Seeto and McDonald, both opined that Plaintiff could not complete a normal workday without resting for hours, and would miss days of work each month because of his impairments.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions.  Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995).  An ALJ must provide "specific and legitimate" reasons, which are supported by substantial evidence in the record, for rejecting the opinion of a treating physician that is contradicted by the opinion of another physician.  Orn v. Astrue, 495 F.3d 625, 632 (9th

Cir. 2007).  An ALJ may reject the opinion of a doctor that is not supported by the record as a

whole, including clinical findings and treatment notes.  See, e.g., Bayliss v. Barnhart, 427 F.3d

1211, 1216 (9th Cir. 2005).  An ALJ may also reject a doctor's opinion that is based upon a

claimant's subjective complaints that are properly discredited.  Batson v. Commissioner, 359

F.3d 1190, 1195 (9th Cir. 2004).

    The opinions of Drs. McDonald and Seeto concerning Plaintiff's need to rest during an 8

hour workday were contradicted by the opinion of Dr. Ramsthel: He opined that Plaintiff could

"stand and walk, and be on his feet" for 2 to 3 hours at a time, for a total of 6 to 7 hours during

an 8 hour workday, and found that Plaintiff's ability to sit was not limited.  Because the opinions

of Plaintiff's treating doctors were contradicted by the opinion of an examining physician, the

ALJ needed to provide specific and legitimate reasons, supported by substantial evidence in the

medical record, for their rejection.

    The ALJ rejected the opinion of Dr. McDonald, Plaintiff's regular family practice

physician, on the grounds that the record did not include his treatment records after August,

2007, and because "no objective medical findings after the alleged onset date . . . support [his]

assessment."  He rejected the opinion of Dr. Seeto on the grounds that his assertion that Plaintiff

could sit for a total of no more than 4 hours during an 8 hour workday "is not supported by the

record," including his treating notes, and because  Dr. Seeto's "more recent" medical records

showed that Plaintiff "denies side effects with the medication."

    These are not sufficient reasons for rejecting the opinions of Plaintiff's treating

physicians.  The absence of treatment notes for Dr. McDonald after August 2007 and the asserted

absence of "objective medical findings" to support Dr. McDonald's functional assessment are not

significant, because the medical record indicates that Plaintiff's  condition is essentially

unchanged and unchanging.  Dr. McDonald's observation that Plaintiff has been "incapacitated in the same way since birth and will have the same incapacity as long as he lives" is uncontroverted by any evidence in the medical record.  It is reasonable to assume that, as Plaintiff's primary care physician, Dr. McDonald was capable of accurately assessing the effects of Plaintiff's cerebral palsy and the fatigue that he concluded was attributable to Plaintiff's medications.  Neither the ALJ nor the Commissioner has cited any method of precisely determining how many hours in a normal workday an individual who had Plaintiff's impairments and took Plaintiff's medications might reasonably be expected to be awake and effective enough to carry out gainful activity.  In the absence of any precise method for this assessment, Dr. McDonald's estimate, based upon his knowledge of his patient and his familiarity with the effects associated with the medications he was taking, is likely the most  "objective medical finding" that might be reasonably expected.  Moreover, the ALJ gave no reasons for rejecting Dr. McDonald's assertion that Plaintiff would likely miss many days of work each month because of his impairment.

The ALJ also failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinion of Dr. Seeto.  The ALJ's assertion that the significant sitting restrictions which Dr. Seeto found were not supported by the medical record is arguably "specific," and would be legitimate if it were supported by the record.  But it is not. Instead, substantial evidence in the record, including Plaintiff's unrebutted testimony, the observations of Plaintiff's parents which were not properly rejected, and a largely concurring opinion submitted by Dr. McDonald, support Dr. Seeto's conclusion that Plaintiff could not sit – awake and active – for more than four hours during a workday.  The record includes evidence establishing that Plaintiff takes medications that can cause fatigue, and medical records,

including Dr. Seeto's own treating records, indicating that they affected Plaintiff in that manner. In light of this evidence, Dr. Ramsthel's contrary opinion that Plaintiff could remain active throughout a complete workday cannot be characterized as "substantial evidence." supporting the ALJ's rejection of Dr. Seeto's opinion.

A note in Dr. Seeto's records indicating that Plaintiff "tolerates medicine well" is not inconsistent with Dr. Seeto's records indicating that medication made Plaintiff sleepy, or with Dr. Seeto's assertion that fatigue significantly limited Plaintiff's functional capacity, given that medications can produce many side effects that are arguably more significant than drowsiness. Dr. Seeto is in the best position to know what he meant when he indicated that Plaintiff tolerated his medication well, and his assertion that medication required Plaintiff to sleep is not inconsistent with that note.

Plaintiff's treating general family doctor and the treating neurologist who specifically addressed issues related to Plaintiff's seizures agreed that Plaintiff's impairments and the medications used to treat them prevented Plaintiff from staying active throughout a normal workday.  These treating doctors had substantial interaction with Plaintiff over a period of several years, and can reasonably be expected to have better understood Plaintiff's limitations than an examining physician who saw Plaintiff one time and the non-examining Agency consultants who never saw him.[1]  The opinions of these treating doctors were consistent with other information which was not properly rejected, and the ALJ did not provide the required support for their rejection.

---

[1] A non-examining physician's opinion which is contrary to that of a treating physician does not constitute "substantial evidence."  See, Pitzer v. Sullivan, 908 F.2d 502, 506 n. 4 (9th Cir. 1990) (opinion of non-examining doctor does not constitute substantial evidence).

FINDINGS AND RECOMMENDATION - 17

Where, as here, an ALJ fails to provide adequate reasons for rejecting the opinions of a treating physician, that opinion is credited "as a matter of law." Lester, 81 F3d at 834 (9th Cir. 1996). The court then has the discretion to remand for an award of benefits or for further proceedings. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional Agency consideration. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). If there are no outstanding issues to be resolved before a determination of disability can be made and it is clear from the record that the ALJ would be required to find the claimant disabled if the opinion were credited, remand for an award of benefits is appropriate. Smolen, 80 F.3d at 1292.

Here, there are no outstanding issues that need to be resolved in order for a determination of disability to be made, and an ALJ who credited the opinions of Plaintiff's treating physicians could only find that Plaintiff is disabled. This action should be remanded for a finding of disability and an award of benefits.

## 4. **ALJ's Assessment of Plaintiff's Credibility**

My conclusion that Plaintiff should be found to be disabled based upon the opinions of his treating physicians makes it unnecessary to address Plaintiff's contention that the ALJ also erred in finding that he was not wholly credible. Nevertheless, I will briefly address this issue in order to create a full record for any further review.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v.

Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.

Because Plaintiff produced evidence of underlying impairments that could be reasonably expected to cause the symptoms alleged and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff was not wholly credible. The ALJ asserted that Plaintiff was not wholly credible because "despite his neurological symptoms, he was able to recently obtain a college degree . . . while engaged in a part-time work-study position at the university library." He also asserted that Plaintiff "acknowledged that he is able to dress, bathe and feed himself."

These are not clear and convincing reasons for concluding that Plaintiff was not wholly credible. The record establishes that it took Plaintiff 10 years to obtain his university degree, and his testimony that he was unable to stay alert and active throughout a full day of classes and studies is unrebutted. Plaintiff's ability to work a total of 4 hours per week is in no way inconsistent with his testimony concerning his fatigue and the drowsiness caused by his medications. Even if it were, Plaintiff's assertions that the University accommodated his disability in that work, and ultimately assigned the work to another student, are not contradicted

by any evidence in the record.  Further, even if Plaintiff were in no way impaired in his ability to

dress, bathe and feed himself, those abilities are not inconsistent with Plaintiff's assertion, which

is supported by Plaintiff's treating physicians, that he cannot remain alert and active throughout

an 8 hour workday.  However, given that the ALJ cites the ability to perform these activities of

daily living as evidence that Plaintiff is less impaired than he has alleged, I must note that

substantial, unrebutted evidence in the record supports the conclusion that Plaintiff performs

these tasks slowly and with considerable difficulty.

    When an ALJ provides legally inadequate reasons for discounting a claimant's testimony,

there are no other outstanding issues to be resolved, and it is clear that a finding of disability

would be required if the testimony were credited, remand for an award of benefits is appropriate.

E.g., Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004).  Here, the ALJ did not provide a

legally sufficient basis for discounting Plaintiff's testimony, and clearly would have been

required to find Plaintiff disabled if that testimony were credited.  There are no other issues that

need to be resolved on remand.  Remand for a finding of disability and an award of benefits is

therefore appropriate.

5. **Failure to Include Drowsiness as a Limitation in Plaintiff's RFC**

    Plaintiff contends that the ALJ erred in failing to account for Plaintiff's drowsiness in his

assessment of Plaintiff's RFC.  I agree.  Plaintiff, lay witnesses, and Plaintiff's treating

physicians all asserted that Plaintiff could not remain alert and active throughout a full workday.

As noted above, the ALJ failed to provide adequate reasons for rejecting these assertions.  Under

these circumstances, the RFC should have included a limitation based upon Plaintiff's inability to

function throughout a full workday.

FINDINGS AND RECOMMENDATION - 20

**Conclusion**

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the Agency for an award of benefits.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 13, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of July, 2012.


  /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 21